Good morning, Your Honor. My name is William Collins. I'm a Deputy Solicitor General for the State of Washington, and I represent Sam Reed, the Secretary of State. I'm going to be dividing argument with Les Weatherhead, who represents the Coalition for Open Government. I'm going to try to take about 11 minutes, and he's going to try to take about three. Okay. Try to keep your voice up, too. Not a fair division, but we'll let you do it. Thank you, Your Honor. The sponsors in this act challenge Washington's Public Records Act, which requires the disclosure of public records. In this case, the district court enjoined the Secretary of State from disclosing any referendum petitions, including the petitions in Referendum 71. We request that this court grant our motion to stay that injunction and reverse the district court. The sponsors' cases relies on decisions that require organizations and individuals to disclose information to the government. Those decisions have no application in this case because signing a referendum petition is inherently public, not private speech. Are they the same cases that the district court relied on? Yes, they are, Your Honor. I want to make sure we're thinking about the same cases. Go ahead. We are, Your Honor. The signing a referendum petition, the signers voluntarily disclose their name and address to the government. They disclose it to the signature gatherers. They disclose it to the sponsors. And they disclose it to any members of the public who might view the petition after they've signed it. It's inherently public speech. So in effect, what we have here is the sponsors want to make public speech anonymous after the fact. And the court's decision should be reversed for that reason. Talking about the decisions that they rely on, both the district court and the sponsors, each of them, the government is requiring individuals or organizations to disclose information that they don't want to disclose. I mean, consider the cases. McIntyre, a requirement that you put your name on a campaign flyer. Buckley, a requirement that a signature gatherer have an I.D. badge. Watchtower, a requirement that you get a permit from the mayor and show that permit when you go door to door with your religious tracts. Tally, a requirement that you put your name on a handbill. NAACP, a requirement that you give a government your membership list. Socialist workers, a requirement that you tell the government about your campaign contributions and your expenditures. All of those situations, private activity, and the government is compelling you to disclose it to them. Contrast this with this case. Now, in this case, the sponsors ---- What do you mean by private? You mean private as opposed to governmental or private as opposed to public? Private as opposed to public, Your Honor. All of these organizations ---- It's a public activity, but you can do it anonymously, and the government is saying you have to tell us, you have to put your name on the petition. No, but you're making the distinction between private and public. That's right. It's not private. It's public. But the ---- If you go out standing in a shopping center, you're asking people to sign a petition, so those are your names. That's public activity, isn't it? It's a public activity, Your Honor, but ---- It protects that public activity. In other words, you're allowed to do it anonymously. That's right, Your Honor. The difference here is that the plaintiffs aren't challenging the requirements that you give your name to the Secretary of State. They have no complaint about Washington's referendum and initiative procedures that requires you to put your name and address on a petition. So voluntarily, all of these people who signed the petition said, I think Referendum 71 is a good idea, and I'm going to put my name on a petition. And what that petition is, Your Honor, is a direction when you read it, it's a direction to the Secretary of State to put the measure on the ballot. The signer is saying, I, Bill Collins, direct you, Sam Reed, Secretary of State, to put Referendum 71 on the ballot. And if enough people do that, then Sam Reed is directed to put Referendum 71 on the ballot. So is this particular case a situation or this particular statutory complex that we refer to here subject to strict scrutiny? No, Your Honor, it's not. Why? Because the Public Records Act, which is what's being challenged here, is just a statute that incidentally I mean, we don't think the Public Records Act, frankly, affects speech at all. But if you think it might incidentally affect speech, then it's subject to intermediate It doesn't affect speech at all. I mean, what the Act does is make public records available. Exactly. The government, I mean, the Public Records Act is something that the government has to comply with. It requires the government to respond to a public records request. It's a general law. It's a law of general application. It doesn't regulate speech. It doesn't compel speech. It doesn't restrict speech. Are you suggesting that there is no political speech involved here? No. I would draw this distinction, Your Honor. When a signature gatherer is talking to a voter, certainly that's core political speech. The Supreme Court has said so. But now the signature gatherer has persuaded me to sign. When I sign, I'm not engaged in any core political speech. What I'm doing is starting the beginning of the election process. And the referendum procedure is simply the regulation of the referendum election process. So that is to say, I am now persuaded that we ought to have Referendum 71. And so I'm going to sign something that directs the Secretary of State to put that referendum on the ballot. So is the PRA an election regulation? No, Your Honor. The Public Records Act is simply a general act of general application. And we would submit, Your Honor, that the Public Records Act doesn't even incidentally affect speech. It simply requires the government to give out public records in its possession. And that includes these petitions. And that includes these petitions. And there's no claim here, Your Honor, that these petitions aren't public records or that there's some exception in the Public Records Act that applies to them. So the Public Records Act doesn't do that. If I make an application in Washington, sign an application asking for a driver's license, is that a public record? I believe that it is, Your Honor, although I'm ‑‑ I believe that it is. Because a public record is defined as a record maintained by the government in the government's possession which the government uses for governmental purposes. So you make an application for a driver's license, the government has that, and it makes a decision should you get your driver's license or not. Similarly, in this case, a referendum petition comes in, the Secretary of State has that petition in his possession, and he uses the petitions to decide whether enough registered voters signed the petition in order to have the referendum election. But are you suggesting, then, that what this is is legislative speech? I think, Your Honor, we've analogized it to legislative speech because the ‑‑ Well, but if we go with legislative ‑‑ I mean, I'm really trying to figure out what kind of analysis you want me to apply by what you thus far argued. If I go it isn't free speech at all, it seems to me it's got to be legislative speech. If it's otherwise, how do I get out of the fact that these are, in fact, signers on a petition, they are signing as to what they would ‑‑ they would like this thing on the ballot, they want it to be voted on by the public, that seems to lead very easily to political speech. Well, but the act of signing the petition is simply a citizen giving a direction to a public official to hold an election. Well, but that's political. That's nonetheless. He's saying hold the election. But I would say that that is analyzed not as core public speech, but simply as an analysis of an election regulation. You have an election regulation that says ‑‑ So you really are saying the PCA is an election regulation? No, I'm ‑‑ I've ‑‑ PR is not. I've confused you and I've confused myself, Your Honor. Public Records Act has nothing to do with elections. Oh. But ‑‑ The way that it deals with that which is a referendum, we're trying to determine if that is a regulation of free speech. Public Records Act doesn't regulate free speech, Your Honor. But the problem here is the complaint of ‑‑ the plaintiff's complaint is that they're going to have something revealed that they were required to put down. They had to put down their name and address. But they're not challenging the statutes and regulations and constitutional provision that requires them to put it down. They've made public speech, and now after the fact, they're challenging the Public Records Act, which doesn't have anything to do with public speech, to make this public speech anonymous after the fact. Let me ask you a second question. You said ‑‑ or another question. Sorry, I guess I've asked more than one. You've suggested this is not anonymous political speech. What other issues did the plaintiffs suggest to the judge that it was? Your Honor, they also have ‑‑ they have a facial claim which the court accepted. Well, that's the second part of the complaint. But as to the first part, as to the ‑‑ well, sorry, the facial challenge, that's the complaint number one, and then the second would be as applied. But what is the argument, if it wasn't anonymous speech, what arguments did they make to the district court other than it being anonymous political speech? That was their main argument to the district court, Your Honor. In their Respondent's Brief, they made an argument that any political speech was core political speech subject to strict scrutiny. We don't think that's correct. And can I reserve the balance of my time, or would you like to ‑‑ I'd be happy to continue answering questions. I just want my colleague to have his. That's okay with me. All right. If it pleases the Court, Les Weatherhead of Spokane on behalf of WCOG. Your Honor, I ask for an opportunity to address you separately from the State to try to drive home the point that the Washington Coalition for Open Government has an interest in this that's distinct from the interest of the State officials in enforcing the election regime. The WCOG is a nonpartisan group. It takes no position on the underlying legislation that it has issued, but it is devoted to the principle that is strongly represented by our State's Public Disclosure Act, that there ought to be transparency in the exercise of State power at all levels. And so as part of the people who declared that strong policy in the Public Disclosure Act of Washington, WCOG asks you to reverse. Now, I'd like to make three points, if I can, in my three minutes. First, Washington has not prescribed that the initiative and referendum processes be anonymous. On the contrary, it has required petitioners to say who they are, and its Public Disclosure Act makes those petitions public record, as to which there are no exemptions. And I think to answer your question earlier, Judge Tashima, I think a driver's license application does fit within the rubric of a public record as defined in the Act. I suspect, although I don't know, that it is subject to one of the nearly 500 exemptions that are within the Public Disclosure Act or imposed on the State by Federal law. This petition for a referendum is not exempted within the Public Disclosure Act. Point two, no provision of the Federal Constitution required that Washington make the initiative and referendum process anonymous. States are free to regulate elections in the manner that they choose. Washington has chosen to make ballots anonymous, but to make sponsorship of petitions for referendums and initiatives public records. So, Mr. Weatherhead, are you suggesting, then, that the PRA is an election regulation? No, Your Honor. I'm simply suggesting that the election regulations require people to identify themselves, to stand up and be counted, and the Public Disclosure Act requires that the people have a right of access to that record that gets created. And the distinction that I would draw, I don't say that there isn't political speech involved here. The distinction that we would draw, Your Honor, is we take no issue with the principles of anonymity as outlined in the district court's opinion as applied to pure advocacy or pure speech. So if there is political speech that's involved here, is that political speech subject to strict scrutiny? No, it is not. Why? Because there is intertwined here both speech and conduct. And what the election regulations require is that when you begin to work the levers of state power, when you begin the process of making laws that will affect the citizenry, the Public Disclosure Act says the people have a right to know. And the Constitution doesn't say anywhere that in the act of legislation that you have the right to be anonymous. So you're really saying this is legislative speech and, therefore, not subject to First Amendment protection? I'm not sure that I would ever say that even legislative speech doesn't have First Amendment protection. I'm sure it probably does. Well, that could be, don't you think, a distinction between legislative speech and legislative action in the sense that they take even in the legislature, you know, when the representatives get up to debate a measure or to, you know, discuss a measure. It's different from, you know, when the chair says, okay, it's time to vote. And so they, you know, and somebody says, I want a roll call. So the vote itself is the action that legislatures take on the pending bill as opposed to, you know, speech advocating one side or the other on the bill. I mean, isn't it possible to draw a distinction between the speech on the legislative floor and the action of voting? I think so. And in this case, we're not talking about the action of voting. We're talking about the action of propounding a matter for a vote. And in the State of Washington, the law decrees that the vote itself, the ballots, are secret, but not the act of sponsorship of legislation. And I'm sure I've more than used my three minutes. Could I ask a question? Sure. This is on an entirely different subject now, but not entirely, but different subject. You know, under the statute, when petitions are filed on a referendum, then the Secretary of State goes through this procedure of verifying them. And then the statute says that Secretary of State may limit the number of observers to not less than two on each side. So I assume each side means proponents and opponents of the referendum measure now. But it's possible other people besides the proponent, the opponent, could have an interest, you know, in the process. I mean, such as, say, you know, people who believe in open government. And there's no provision in the statute for those people to have any part in the verification process, is there? No, Your Honor. But the Public Disclosure Act furnishes that access. That's its point. And I, you know, I think the Attorney General has explained that those limitations on who can be in the room and what they can do while they are there are sort of, those are sort of prudential limitations on the process of validation and limited to that context. All right. Thank you. You're just talking about what's part of a public record, has names on it, has addresses on it. And you just want to know who the people are who signed this petition. Yes, Your Honor. And so what does that all have to do with speech? I think that's precisely the point. No one's compelled to make a speech. No one's compelled to sign a petition. If you want to initiate legislation by initiative or call for a vote on existing legislation by referendum, you have to stand up and be counted under the election laws, and those laws are not being challenged here. But nobody's telling you that you have to say anything or not say anything about any laws that you would like to see or that you would like to see changed. Well, but hasn't Buckley and McIntyre and Meyer all suggested that this referendum, this process is speech? Your Honor, I read those cases to be saying that the advocacy around those issues is pure political speech and you can be as anonymous as you want to be. I just don't see that those cases apply to the situation in which you step up and you say, I am now proposing for adoption by the people of the state of Washington this legislation. That's different. That is beginning to turn the wheels. Well, where do I go in Meyer, where do I go in McIntyre, where do I go in Buckley to find that fine distinction? It seems to me by just saying that we ought to have a legislative proposal or that we ought not is a political speech. I think just saying it would be political speech. And is that what each one of those signatories are doing? No. They are using their power as franchisees under the Constitution of the state of Washington to initiate legislation. They are beginning the process of making law. And that is a substantial remove from merely advocating for a change or proposals of law. I don't know. You know, Tip O'Neill, I think he said, all life is politics, and all politics is political. Unless the Court has further questions. Thank you, Your Honors. Good morning. May it please the Court. My name is Jim Bopp. I represent the plaintiffs below, John Doe I, John Doe II, and the Initiative Committee. There are groups in the state of Washington that seek 138,000 names and addresses so that they can encourage individuals to contact these people and have a, quote, personal and uncomfortable conversation with them, end of quote. Only if the state produces and makes public these names and addresses will there be a risk that such uncomfortable conversations will take place. Well, that really goes to your count two, doesn't it, which the district court didn't pass on. No, that goes to count one. Count one is, of course, the legal claim that because this involves the disclosure of the identity of people who have engaged in political speech and because there is, as a matter of law, the potential for harassment or intimidation or adverse consequences, that strict scrutiny is required in order for the government to disclose the identity of those people. So that's your basis for the application of strict scrutiny, that signers could be subject to harassment? Yes, that disclosure of the identity of someone can, as a matter of law, subject those people. Why do you say as a matter of law? Well, we don't have to prove it. Well, I mean, I mean, on that basis, you know, names should never be disclosed, right? In many cases, names are never disclosed. In every case, if it's a matter of law. Well, if there's a compelling governmental interest that would support the disclosure, well, then it can be held. Then it can be upheld. But I'm saying the strict scrutiny is required in the context of the disclosure of the identity of anyone. And we've seen this in all these different cases, McIntyre, somebody doing a pamphlet. Mr. Bob, let me ask you a question. As I understand it, the anonymous political speech that the judge relied on below, that you are maybe suggesting that was not quite a good ground on which to base this? No. You still are advocating that? Of course. All right. Did you raise any other grounds below? Well, yes, we said. Well, the context is that this is political speech. Okay. If it's political speech, let me ask you a question. Are the PRA regulations both viewpoint and content neutral? Yes, and we are not challenging the PRA on its face. We are challenging the application of the PRA. Well, that application is your count two, but we're really talking count one. No. Facially. No. No, that's not the way the counts are divided, Your Honor, based on its face or as a point. Well, if, in fact, the regulations are both viewpoint and content neutral, isn't then our analysis simply whether the PRA is merely a time, place, or manner restriction? We're not challenging the constitutionality of the PRA, except as applied to disclosing this petition. We are not challenging it on its face. Well, what are you worried about? Tell me. Well, we're worried about that as the State concedes, I mean, the practical worry is as the State concedes on page 57, that publicly disclosing these names will result in confrontations. They agree that confrontation instead of conversation is most likely to result. That's what you have in politics all the time, you know. Yes, but. Confrontation. That's part of our culture. But not through compelled disclosure of the identity of people by the government. But what are they afraid of? Well, they. They can express an opinion, you know, giving them the benefit of the doubt. Most people, you know, they go by a supermarket and someone says, oh, you want to sign this because this is going to help the country or it's going to have some other benefit and may or may not have anything to do with what the petition is. And people go up and just sign it. Some people say, don't bother me. And if they sign it? So I've never heard of a situation where people are confronted because they sign a petition. Well, they. Isn't this an imaginary problem? Well, it's not whether you've heard about it or not. It is in the record. Well. It is in the record that people want to do this. Let me ask you another question. Well. They want to publish these on the Internet because they want this to happen. You have people that go around harassing people. The law can handle that. Well, this is what the Ninth Circuit said to your very point. In the Wynn case decided in 2000. Who said that? The Ninth Circuit. Who? I don't know the judge that wrote the opinion. It was a unanimous decision of a three-judge panel. In the Wynn case in 2000, anonymity is a shield from the tyrancy of the majority. It thus exemplifies the purpose behind the Bill of Rights and of the First Amendment in particular to protect unpopular individuals from retaliation and their ideas from suppression at the hands of an intolerant society. People are entitled to privacy about this. Privacy about their views. Can we take judicial notice of the fact that the proponents of this referendum 71 represents a majority position in our country? I don't know whether they represent a majority. If you look at all the votes across the country. But it's irrelevant whether. No, it's relevant in the sense you're talking about a minority. You're just talking about an oppressed minority, weren't you? Well, yes. But that's you know, we don't know in the state of Washington what the situation is. Well, if we're going to have a we're going to have. Oh, how can you claim to be an oppressed minority? But I don't think. But the force of this statement of the U.S. Supreme Court in McIntyre and this circuit in the Wynn case was not to protect only minority people from disclosure of their identity because there are people on both sides. I would have said that will do things specifically refer to minorities. Well, yes, it did. It said unpopular. Actually, I mean, why does that actually said unpopular? Why does the segment that represents the majority of the population need that kind of protection? Because there are because there are people who will engage in these harassment activities against the majority. I mean, it's not dependent. Give me one example where that's happened. Your Honor, in the record here. I'm just asking you to give me an example. Yes. There are the the executive director of the entity here that was circulating the petitions in the complaint set out five different times in which he was either received an e-mail or a phone call or a personal threat against him personally, including violence. Because he's circulating a petition. And his name was on there. His name was not on it. He received the threats was sent to him. Now, he has been identified as the head of this organization. So his name is a public record. And we're not arguing about proponents or chairman of organizations. He's not making threats against other people. Not that I'm aware of. He is a recipient of threats. He is a recipient of threats. Let me change the subject just a little bit. You say that Meyer is supportive of your position that this ought to be strict scrutiny. Yes. Yet in Meyer, wasn't this a Colorado ordinance that prohibited proponents of an initiative to pay individuals to distribute? Yes. And the Supreme Court found that a limitation on political expression are subject to strict scrutiny. Correct? Correct. Well, in this case, this statute doesn't do anything like that. All this statute does is straight across, as you've already agreed with me, no viewpoint neutral, content neutral says we disclose everything. There is no initiative that's involved where initiative has to do one thing or has to do the other. It's just a simple, straight statute that says lay out who's there. It has nothing to do with an initiative or an election or a political expression at all. And that would be pertinent if we were challenging the PRA on its face. We're not. We are challenging the requirement of disclosure as applied in this case. Did the court really reach that issue, the district court? Yes. Where? What part of its opinion suggests that it reached the applied portion of your argument? Well, that was the injunction. I thought that the court said this is anonymous political speech, and because of anonymous political speech I'm going to suggest that I issue the preliminary injunction. Never took up the evidence that we've now talked about for some time. Well, that statement is a description of the petition signatures. It's not a description of other government records that are subject to disclosure. So in McIntyre, where the court said that the mechanics of the electoral process are subject to lesser scrutiny, regulation of pure speech is subject to strict scrutiny, is this an electoral process? No. Let me ask you another thing then. With McIntyre, weren't we prohibiting the distribution of anonymous campaign literature there? True. And so isn't that, in that particular instance, inapplicable here because this is applied? Actually, I misstated my answer to the McIntyre question. There was not a prohibition on distribution of literature. There was a requirement in McIntyre of the disclosure of the identity of the person who was distributing the literature. Okay, so the anonymous campaign literature. Yes. But, again, we were dealing with a political, an absolutely political speech in those particular situations where the content and, in fact, the viewpoint was being directly controlled or limited. Whereas in this instance, you agree with me. The viewpoint and the content has not been. I have not agreed with you on that as far as our challenge is concerned. We are not challenging the Public Records on its act, on its face. We're only challenging the requirement that these petition signatures be disclosed. So what the Public Records Act does or doesn't do, generally, we're not challenging that. We're only challenging that these signatures are subject to being disclosed by that. So that's an as-applied challenge. This law as applied. So as applied. To this. If I don't agree with the Court as to the anonymous political speech, and that's where he really got to in this particular matter, he's saying, I think this is an anonymous political speech. I ought to grant the preliminary injunction. If I don't agree with that, and I suggest that it is an anonymous political speech at all, and I further have no constitutional challenge to the statute, as you now contend, then at that point, I'm only looking at, is this preliminary injunction, should it be enforced? What's the standard review? We so have a constitutional challenge to the statute. As applied. Well, I understand that. As applied to disclosing these petition signatures. We are saying that that is unconstitutional. Under all circumstances. Well, I guess I'm trying to figure out. Certainly as to this one, that's our claim. I mean, we're not trying to encompass everybody. I'm trying to figure out what part of Meyer or McIntyre or Buckley do I look at? Because in both of those situations, the viewpoint and or the content was not neutral. And therefore, the Court acted. Actually, in none of those cases did they get into viewpoint neutrality or not neutrality. They were talking about identifying the McIntyre. Let's leave away new viewpoint. Let's talk about content. Yes. In each one of those circumstances, they said they were not content neutral. And if in this, these particular regulations are content neutral, how do I rely on Meyer, McIntyre and Buckley? Content neutrality is an analysis that is applicable when you have a facial challenge to the statute. We are not making a facial challenge to the statute. We are saying that this is political speech, and as Buckley said, and so did Meyer, that a petition, a referendum petition is a, quote, expression of a desire for political change, end of quote. That is quintessential political speech. And what we are saying is, is that political speech, that the identity of people who engage in political speech cannot be required by the government, in other words, done by the government, unless it satisfies strict scrutiny. But just a minute. If I look at O'Brien and I look at Turner Broadcasting and all of those cases, they don't require strict scrutiny at all if, in fact, the statutes are content neutral. So at that point, they go into another analysis, which is that we are going to have intermediate scrutiny. And at that point, I have to look at the legislative intent and the interests of the state and compare it to yours, don't I? That all has to do with facial challenges, not with as-applied challenges. An as-applied challenge, this is a speech that they want to apply the public records law to, and that speech is signing these petitions. So that is political speech. Let me ask one more question and then I'm through. Did the district court ever evaluate in any way in its decision really the injury that has been foisted upon your clients? In its decision, did it even look at the injury? Did it even compare the injury or analyze the injury or even suggest as to whether the injury was sufficient for a preliminary injunction? Well, I believe they did. Where? What part of its decision? Well, the part when the ---- If you could list the page, I'd be glad to look at it. Well, I'm sorry. I don't have the page numbers. Well, in fact, didn't it presume injury? Huh? Didn't the district court presume injury? Well, only as to ---- well, certainly as to this extent, and that is the compelled disclosure of the identity of someone engaged in political speech, that there is an inherent First Amendment injury. As this court held in Wynn, and by the way, in Wynn, they took Meyer one step further and struck down identifying the requirement of identifying paid circulators. Okay? So this was a purely identification issue. So the answer is yes. The district court presumed injury. As to that ---- It didn't find injury. Yes, not as a matter of fact. True. They presumed it because it exists as a matter of law. Compelled disclosure undermines First Amendment activity as a matter of law. Then you don't have to prove it. And from that, it presumed injury. Just because there's a violation doesn't mean there's an injury. Well, it presumes the injury, which triggers first strict scrutiny. And then we see whether or not there's a compelling governmental interest that justifies undermining First Amendment ---- undermining the First Amendment activity by compelled disclosure. You know, is there an interest that is sufficient here? And I see that I stopped. I'm perfectly happy to answer any more of your questions. Oh, I know you've answered all that I have. And I thank you for your response. Thank you. Thank you. Your Honor, I think my time has expired. And unless the Court has additional questions for me, which I would be happy to answer. Well, have you got something to say to us that's important that you think? I think just one comment by way of summing up, Your Honor, and I'll be very brief. As you know, the district court ruled in the plaintiff's favor on Count 1. And Count 1 was a facial challenge to the application of the Public Records Act. Indeed, what is enjoined is not just Referendum 71 petitions. The Secretary of State would be enjoined from disclosing any referendum petitions. Now, the only referendum we have is Referendum 71. But the district court's order would apply to any referendum petition. So we believe that that was based on the trial court's analysis of anonymous speech, which we believe is incorrect. Public Records Act is a neutral statute of general application, and it would satisfy intermediate scrutiny. So we would request the Court grant our motion to stay the preliminary injunction and reverse the district court. If there are no questions. Thank you, Your Honor. Anything you want to say in response to that? Anybody else want to be heard? All right. Under Judge Ferguson's rule, you're allowed. He's the presider. So if you wanted to say something, you absolutely could. Okay. A free country, isn't it? Okay. Thank you. All rise. Judge Ferguson is at his answer. Thank you.
judges: Pregerson, Tashima, Smith M.